Stevens *v.* Owen.

---

ABIGAIL STEVENS *versus* JEFFERSON OWEN.

The wife, by joining in a deed of warranty with her husband, does not release her right of-dower in the premises conveyed, unless there be apt words to express such intention on her part. The words, "in token of her free consent," inserted in the conclusion of such deed, are not sufficiently expressive of such intention to bar her of her dower.

If land be contiguous to and in any manner used with an improved estate, as for fuel, fencing, repairs, pasturing, &c. it forms no exception to the common law principle that the widow is entitled to dower in all the lands of which her husband was seized in fee during the coverture.

Where the husband, during the coverture, was seized in fee of a five acre lot of land, "partially improved," and "partly covered with bushes and unfenced," at the time of his conveyance thereof, *it was held*, that the widow was entitled to dower in the whole lot.

THE action was of dower, in which the tenant pleaded a release of dower, and also that there were no rents and profits to the estate, wherein dower is claimed, during the coverture, the same having been in a wild and uncultivated state. At the trial, before SHEPLEY J. the marriage, death, seizin of the husband, under whom the tenant claims, during coverture, and a seasonable demand of dower upon the tenant, were admitted.

The tenant then read in evidence, a deed of warranty from Thomas Stevens, late husband of the demandant, dated May 1, 1827, to Amos Phillips, the tenant's grantor, conveying a tract of about five acres of land, of which the demanded premises are a part. The conclusion of that deed was as follows: — "In witness whereof, I, the said Thomas Stevens, together with Abigail my wife, in token of her free consent, have hereunto set our hands and seals this first day of May, in the year of our Lord one thousand eight hundred and twenty-seven." And the deed was signed and sealed by said Thomas Stevens and by the demandant.

The tenant then offered to prove, that the land in which dower is now demanded was in a wild and uncultivated state, during the seizin of said Thomas, and at the time of his conveyance; that although not covered with trees, the same was covered with bushes and unfenced, and did not, during said seizin, yield any rents, profits, or income whatever, although another part of the five acre lot described in the deed was partially improved; and that the land wherein dower is now claimed would now yield no income, if the same had remained in the condition in which it was at the time of the conveyance thereof from said Thomas Stevens to said Phillips.

The presiding Judge rejected the evidence. And thereupon a default was entered, with the consent of the tenant, to be taken off, if in the opinion of the whole Court, the demandant was barred of her dower by her so joining in the deed, or if the testimony offered and rejected should have been received.

*S. May*, for the tenant, remarked, that the deed in question was one of very many written by the same person, a surveyor, wherein the words intended as a relinquishment of dower were the same as in this. The question then is an important one.

The demandant released her claim to dower in the same deed with her husband to Phillips. He advanced the following among other reasons for this position.

In 1631, the Colony of Massachusetts Bay, ordained, that the widow should be entitled to dower in the lands whereof

her husband was seized during the coverture, unless she had barred herself by her *act* or *consent* signified in writing under her hand. Ancient Charters, 99, c. 37. In 1697, it was provided, that the widow should have her dower, unless she shall have *legally joined with her husband in the sale.* An. Chart. 304, c. 48, § 2. In 1784, the legislature of the State of Massachusetts passed an act in relation to dower, which remained in force until the acts of 1821, c. 36, and c. 40 of the State of Maine, were in force. The statutes in the States of Massachusetts and Maine on this subject are substantially alike. In chapter 36, § 2, it is provided, that nothing in the act contained shall bar a widow of her dower, "who *did not join with her husband* in such sale or mortgage, or otherwise lawfully bar or exclude herself." And the provision in the "act concerning dower," c. 40, § 6, is, that the widow shall be entitled to dower in all lands of which her husband was seized during the coverture, "except where such widow, *by her own consent,* may have been provided for by way of jointure prior to the marriage, or where she may have relinquished her right of dower by deed under her hand and seal." Such was the law when this deed was made, and when the demandant's husband deceased. These statutes all regard the wife as having a legal capacity to contract in relation to her real estate, and as having power to give her consent in writing under her hand, or by her deed, in which her husband joins, for the sale of her estate, or for the extinguishment of her rights. When, therefore, the wife joins with her husband in a deed, she is as much bound by the words, so far as they relate to her, as her husband is as to those relating to him. That the intention of the parties is to govern, is as applicable to her as to him. Wherever the words in the deed clearly imply an intention to relinquish her dower on the part of the wife, she is thereby barred of her right to claim it. Stearns on Real Actions, 289; *Catlin* v. *Ware,* 9 Mass. R. 218; *Lufkin* v. *Curtis,* 13 Mass. R. 223; *Leavitt* v. *Lamprey,* 13 Pick. 382; *Learned* v. *Cutler,* 18 Pick. 9. The intention of the wife is to be gathered from the words of the deed. In this case, the deed

was a warranty, that the land was free from all incumbrances, and the wife signs and seals the deed, and gives her *free consent*, that the land should be thus conveyed. She must have expected and intended to relinquish her claim to dower in the premises conveyed. If she did not execute the deed for that purpose, what was her motive in so doing? An inchoate right of dower is an incumbrance on land. *Porter* v. *Noyes*, 2 Greenl. 22; *Jones* v. *Gardner*, 10 Johns. R. 266; *Shearer* v. *Ranger*, 22 Pick. 447. He contended, that the case of *Leavitt* v. *Lamprey*, when attentively examined, was in his favor rather than opposed to him.

It is well settled, that the widow is not entitled to one third part of the land; but to such part only as will yield one third part of the rents and profits, which the whole yielded at the time of the alienation. 9 Mass. R. 218; 1 Pick. 21; 15 Mass. R. 164. There were no rents or profits arising from this land, and from its condition there could not have been, while the demandant's husband was seized thereof. The demandant therefore was not entitled to dower in the premises; and the testimony offered was erroneously rejected.

*Howard & Shepley* and *Washburn*, for the demandant, considered it to be very clear, that she had not released her claim to dower by executing the deed to Phillips with her husband. The mere signing and sealing the deed of the husband by the wife, does not convey her right of dower, without some apt words of conveyance, clearly indicating such intention. The mere declaration of "assent" or "free consent," of the wife to a conveyance by her husband does not take away her right of dower. *Catlin* v. *Ware*, 9 Mass. R. 218; *Lufkin* v. *Curtis*, 13 Mass. R. 223; *Leavitt* v. *Lamprey*, 13 Pick. 382. The last case cited was considered to be directly in point.

The testimony offered at the trial was rightly excluded by the presiding Judge.

The proof offered, admitted that another part of the five acre lot was partially improved at the time of the conveyance, which of itself entitles the widow to dower in the whole lot.

By dividing up the lot into several parcels, and conveying them to different persons, the right of the widow to dower in the whole cannot be taken away. She cannot join the several tenants in one suit, but must proceed against them severally. *Fosdick* v. *Gooding*, 1 Greenl. 30.

By the common law, a widow is entitled to dower in all the land of which the husband was seized during the coverture, with certain exceptions not applicable here. Some innovations have been made by the decisions in Massachusetts. The case of *Conner* v. *Shepherd*, 15 Mass. R. 164, cited for the tenant, applies in its terms only to "a lot of wild land not connected with a cultivated farm." The only ground and reason for exempting wild land from dower are, that by the principles of the common law, the estate of the dowress in such lands would be forfeited, if she were to cut down the trees. But where the land is susceptible of improvement and of yielding profits, whether improved so as to produce them or not, without injury to the inheritance, the widow is entitled to dower.

*Deblois* replied for the tenant.

The opinion of the Court was drawn up by

WHITMAN C. J. — The first question presented is, as to the construction to be put upon the language used by the demandant in the deed made by her and her husband to the tenant. The deed, on the part of her husband, conveys the premises in fee, with a general warranty. She, in the conclusion of it, says, "in token of her free consent" she signs and seals it. This is supposed by the tenant to import a relinquishment of dower; and, if this was not intended to be the effect of what she did, it will be difficult to understand why she should so have executed the deed. It was otherwise an unmeaning and useless ceremony. Her husband had no other reason for having her seal and signature to the deed.

But this mode of barring wives of their right of dower has been looked upon with some jealousy. It was unknown to the common law; and is supposed to have crept into use from a misinterpretation of an ancient statute. *Powell & ux.* v. *M.*

& B. Man. Co. 3 Mason, 347. It has, therefore, been consid-
ered, that the language used by the wife, to bar her of her
right of dower, should be explicit, so that she could not mis-
understand its import. Very little, if any thing, is to be left
to inference. Stearns on Real Actions, 289; *Catlin* v. *Ware*,
9 Mass. R. 218; *Lufkin* v. *Curtis*, 13 *ib.* 233; *Leavitt* v.
*Lamprey*, 13 Pick. 382; *Learned* v. *Cutler*, 18 *ib.* 9; *Hall*
v. *Savage & ux.* 4 Mason, 273.

Mr. Justice Wilde, in *Learned* v. *Cutler*, in delivering the
opinion of the Court, remarks, that the wife "must not only
join with her husband in a deed of conveyance of the land, by
executing the deed, the deed being made by him, but the deed
must contain apt words of grant or release on her part." It is
very evident in the case at bar that the deed contains no such
apt words. It contains only her consent to the execution of
the deed.

In *Hall* v. *Savage & ux.* the language of Mr. Justice Story,
is to the same effect. It was in reference to these words in a
deed executed by the wife, "I agree in the above conveyance,"
which are certainly as cogent to prove a relinquishment of
dower as those in the deed of the demandant. Agreeing to a
conveyance is certainly equivalent to a free consent, especially
when, as in this case, it is not stated to what the free consent
has relation. This learned Judge expresses himself as follows,
"The rule of law appears to me to be plain, that the wife can-
not release her dower except there be apt words to express
such intention. Doubtful words ought never to be construed
to have such an effect."

The other point relied upon in defence is, that there were
no rents and profits derivable from the land at the time it
was conveyed, and, therefore, that the demandant was not
dowable thereof. This is predicated upon several decisions
in Massachusetts, New Hampshire and Maine, that a widow is
not dowable of wild lands, remote from, and not occupied
with improved lands; and the reasons given for such a decision
are supposed to be applicable to this case; one of which
reasons is, that, from such lands, no rents and profits are deriv-

able. The better reason, upon which those decisions must mainly depend, has reference to their being in such a state, that they could not be made productive of any income without the commission of waste thereon. To assign dower, therefore, in such lands would be useless. If such lands had on them, as is sometimes the case, extensive natural meadows, which could be used to advantage, without the commission of waste, it remains to be decided that they would or would not be subject to dower; unless the provisions of the Revised Statutes can be considered as settling the question.

It should be borne in mind, that, at common law, the widow is entitled to have one third part of the lands of which her husband had during coverture been seized and possessed in fee, and as of freehold, set off to her use during life. 4 Kent, 35. But, in seeming derogation of this general principle, our courts have introduced a modification to the effect, that dower shall be assigned according to the rents and profits of the estate; and, hence, that lands in a wilderness state, and not used in connection with improved estates, and not being productive of rents and profits, are not subject to dower. This is the extent to which our decisions have gone. *Conner* v. *Shepherd*, 15 Mass. R. 154. If land be contiguous to, and in any manner used with, an improved estate, as for fuel, fencing, repairing, pasturing, &c. it forms no exception to the common law principle. It must be presumed, in such case, that there are rents and profits therefrom accruing, to which a right of dower would attach.

The report of the case by the Judge, who presided at the trial, shows that the demand is of dower in a part of a five acre lot of land, partially improved. The proposition in defence was to show, that the particular part of it, in which dower in this action is demanded, was overrun with bushes, and was not productive of rents and profits. But land may be cleared of bushes without committing waste, and thereby be rendered productive; and land covered with bushes is oftentimes useful for pasturage. The proposed proof was therefore rejected, and we think very properly. To admit of such proof,

under such circumstances, would be the introduction of a further modification of the common law principle, not warranted by any former decision, and manifestly in violation of the just rights of those entitled to dower.

*The default must stand, and judgment be entered thereon.*